\*WORTHINGTON E. BABCOCK, GUARD. v. WILLIAM, MONYPENY, EXR.

1. **Spendthrift Trust Vests in Trustees at Death of Testator but Use to Cestui Que Trust Postponed to Conform to Purpose of Will.**

   A spendthrift trust clause of a will, introduced as a "further trust" to "be raised" out of testator's estate but not specifically fixing the time when the trust becomes effective, following a preceding clause directing the creation and fixing the time for the raising of a prior mentioned trust, and preceding a subsequent clause specifying the same date for general distribution under the will, vests the trust estate in the trustees thereof at testator's death but postpones· the use and enjoyment by the beneficiary until the purposes of the will are developed and its assets ascertained for distribution, which is the time fixed in the clauses preceding and following the trust clause.

2. **Spendthrift for Whose Benefit Trust is Created not Deemed to be Entitled to Greater Benefits than Heirs of Good Deportment.**

   The beneficiary of a spendthrift trust, for whose benefit testator has devised the use of a full and equal share in his estate and certain annuities payable from the net income of the residuum of the estate, after division according to devises specifically directed, having been denied absolute rights in his share because "reckless in business and of dissolute habits," will not be deemed entitled to greater benefits than heirs of good deportment and business application, especially since the provisions of the will manifest an idea of equality in final distribution.

\*Affirmed, no op., Babcock v. Monypeny, 86 O. S. 308, 365.

**3. Order of Distribution of Estate of Spendthrift.**

> A devise (1) by way of spendthrift trust to be raised out of
> testator's estate, to be held and invested by executors for a
> son of testator and his heirs and assigns forever and, upon
> the death of the spendthrift, of the "property" of the trust in
> fee simple to his legitimate children, to be subject to advance-
> ment and conveyance absolutely to them upon the youngest
> child coming of age, and (2) bequest of a fixed annuity out of
> the net income of testator's estate, and (3) pro rata share of
> the residuum after betterment and maintenance charges are
> paid, give the son an absolute estate in the (1) trust property
> subject to the rights of his children; an absolute estate in
> the (2) annuities which cannot be withheld or accumulated for
> the benefit of the principal estate, to which the son's executrix
> is entitled to an accounting and payment of any balance due
> at his death; and (3) the pro rata income of the residuum is
> payable to the son during his life from the time it becomes
> available and to his children after his death.

**4. Sinking Fund of Estate Applies to Accumulations from Reinvest-
ments of Estate Property.**

> An item of a will providing for a sinking fund for improvement
> and betterment of testator's real estate applies to the accumu-
> lations of the principal of the estate to be derived from sales
> of personal and real property for purposes of reinvestment and
> not to accumulations from income to be used in discharge of
> indebtedness.

APPEAL from common pleas.

## ALLREAD, J.

This action involves a construction of the last will and
testament of William Monypeny, deceased, and is brought here
on appeal.

William Monypeny died September 12, 1899, leaving a will
dated September 23, 1895, and a codicil dated September 7,
1899. Four children and a grandchild representing a deceased
son survive the testator.

George R. Monypeny has since deceased, leaving the plain-
tiff's wards, his children, and Marie R. Monypeny, his widow.

Item 1 of the will of William Monypeny provides for the
payment of debts; item 2, a specific bequest to his widow, and
item 3, an absolute gift to a daughter.

The controverted questions of construction are involved
largely in items 4 and 5 as amended by the codicil and relate

to the interests growing out of the share of George B. Monypeny.

Item 4 trustees the residuum of the estate for distributory purposes, while item 5 provides for family annuities pending distribution of the residuary or distributory trust.

Item 4, after creating the general trust, defines its purposes in three clauses. The first clause directs a trust to be raised out of his estate on or before November 18, 1902, for the benefit of the testator's son Perin and granddaughter Maybelle as the representative of the deceased son, and to be charged against them in final distribution. This trust was to be carried forward and finally settled and paid to them November 18, 1912.

The second clause creates a spendthrift trust of the shares of William and George B., and its more important features may be quoted as follows:

"(2) I hereby order and direct that a further trust shall be raised out of my estate and be held and invested by my executors * * * the two whole, full and equal shares and all and singular of the property thereof, and in amounts equal one with the other, of my entire estate, except and after deducting the special bequests and devises made to my wife and to my daughter in items second and third, respectively, of the will, for the use, benefit and behoof, after first charging them, respectively, with all advances theretofore had, of my two sons, William Monypeny and George B. Monypeny, their heirs and assigns forever, and the property thereof to be given, transferred and conveyed in fee to their legitimate children at their death by right of representation on the youngest child of each attaining his or her majority, or becoming of age under the laws of the state of Ohio, except as hereinafter provided. The net income arising therefrom after the payment of all taxes, assessments, proper insurance and repair charges, shall be paid quarterly or at such convenient times as may, in the judgment of said trustees, be proper to the said William Monypeny or George B. Monypeny or to their heirs. * * * In the event that one or both of my sons, William and George, die without issue of their body, or the issue of one or both dies or

die without issue, said share or shares arising out of said trust shall be paid to my estate, except one equal distributive share thereof which shall go to and become a part and share of the trust hereof of the son or his issue then living.  Should both of said sons and their issue all be dead before the execution and termination of this trust, then said fund thereof shall vest in and ascend to my children then living or to their issue by right of representation in equal distributive shares.  The last two foregoing trusts are formed because my sons William and George have for years past been reckless in business affairs and of dissolute habits, thereby to a large degree disqualifying themselves from accumulating or taking care of property.''

The third clause of item 4 provides for a full distribution on November 18, 1902, of the remainder of his estate, equally, among the remaining children and the granddaughter as the representative of the deceased son.  By the codicil the spendthrift trust as to William is annulled, and William is transferred to clause three, item 4, and thereby placed with the class entitled to receive their shares upon final distribution in their own right, with this statement:

''My reason for revocation of clause two of item 4, so far as the same affects my son William alone, is because in business and socially, he has conducted himself so well, that my confidence in him has been fully restored.''

The codicil further provides that the

''Trust to be raised for the use and benefit of my son George B. Monypeny shall remain undisturbed and unaffected.''

The codicil also amends clause three so as to make the distribution day November 18, 1912, and the 5th item as amended by the codicil provides that,

''During the continuance of said trust provided in item 4th, that is to be ended on the 18th day of November, 1912, I hereby order my executors hereinafter named to pay to each of the following named persons either in money or such articles as his. or her comfortable maintenance may require, as the judgment of the executors may deem best, but not to charge them, respectively, in the final distribution of my estate, to-wit:
*   *   *   To William Monypeny $2,000 per annum to be paid

quarterly.  *  *  *  To George B. Monypeny $2,000 per annum to be paid quarterly.  *  *  *  Said foregoing named amounts shall be paid from the net income from my estate *  *  *  and in case the net income yearly of my estate shall amount to more or less then the aggregate annual amounts of the bequests above stated  *  *  *  then and in such event, said payment shall be made pro rata."

The first and most important question represented is as to the time when the spendthrift trust in favor of George B. Monypeny vests and becomes effective.

Upon this issue the guardian of the children of George B. Monypeny and his widow and executrix are in accord. Their contention is in favor of an immediate or at least an early vesting of the trust estate and the realization and enjoyment of the net income; while the trustees of the residuary estate contend that the trust in favor of George B. Monypeny is not to be "raised" or enjoyed until final distribution on November 18, 1912.

Counsel for the George B. Monypeny interests insist upon a literal reading and interpretation of the devising clause creating the spendthrift trust and of the direct reference thereto in other parts of the will. This contention, however, if accepted, does not settle the controversy, for even the literal reading of the devising clause does not fix or determine the time for the raising or creation of the trust estate. It is contended, however, in support of this theory that the court should apply the well-known rule of construction favoring the immediate vesting of estates. The foundation of this doctrine of construction is found in the second syllabus of *Linton* v. *Laycock*, 33 Ohio St. 128, and is as follows:

"The law favors the vesting of estates and in the construction of devises of real estate, the estate will be held to be vested in the devisee at the death of the testator, unless a condition precedent to such vesting is so clearly expressed that the estate cannot be regarded as so vested, without directly opposing the terms of the will."

This case follows and is in accordance with the principles of the common law which required or at least favored the vest-

Babcock v. Monypeny.

ing of the legal title to real estate. In the present case the legal title became vested in the general trustees and is carried forward until final termination of the trust and then transferred to the ultimate beneficiaries. This vesting of the legal estate in the general trustees answers the common law requirement. But assuming that the doctrine favoring the vesting of estates applies to the equitable right of George B. Monypeny to have the trust raised and the income applied to his benefit, it does not follow in the application of the rule that the present possession or enjoyment follows the vesting of the right. It often occurs in the construction of wills that the right to an estate vests although the enjoyment be postponed. Conceding, therefore, the vesting of the equitable right of George B. Monypeny to the benefit of the trust to be raised in his favor, the time when the trust is to be raised and the net income enjoyed must be determined, as any other question of intention, from the interpretation of the will.

It is evident from a reading of the will that the distributory trust created in item 4 was to be carried forward over a period of time for the purposes of future distribution.

Clause one provides for a special advancement to the minor son and granddaughter and was directed to be raised on or before November 18, 1902. Clause two directs that,

"A further trust shall be raised out of my estate and be held and invested by my executors," etc.

"A further trust" indicates an intention, to be considered along with that arising from the consecutive order, that the trust created by clause two is to be raised after that created by clause one. The phrase "raised out of my estate" alludes evidently to the act of separating the proportion or share therein specified from the body of the estate, giving it a separate existence. It is clear from a broader view of the entire 4th item that clause two is distributory in its general character and deals with certain shares of the estate. The idea of equality of the final distribution of the *residuum* is clearly manifest. The language of clause two is unmistakable that subject only to certain deductions, the testator's "entire estate" is to be divided into "equal" shares and that "two whole, full and

equal shares  *  *  *  and in amounts equal one with the other, of my entire estate'' are, according to the original will, to be raised and held for the benefit of William and George. This idea of equality is emphasized in the reason given in the will for the creation of the spendthrift trust as to the shares of William and George and by that given in the codicil for releasing William's share from the trust and placing him with those who receive their shares absolutely.

The contention of those representing the share of George B. Monypeny in favor of an early vesting of the estate carries also as a necessary inference the immediate enjoyment of the net proceeds of the share. The effect of this contention is to give to William and George under the original will the income of their full share and also the annuity under item 5 payable out of the remaining shares. This contention is out of harmony with the general scope of the will and in conflict with the reasons expressly stated for the creation of the spendthrift trust and the releasing of William's share therefrom.

It would require clear and unambiguous language to exemplify an intention of rewarding the spendthrift sons with a double portion of the income at the expense of the others whose character and business capacity is not questioned. And it would be the very acme of absurdity to resolve doubtful language so as to effectuate an intention to take William's share from a favored clause and reduce his income and estate upon the sole ground of reformation and restoration to the testator's full confidence. The contention so made in favor of the George B. Monypeny interests comes in direct conflict with the manifest scope and express provisions of item 5, which provides for family annuities of certain amounts, including $2,000 each to William and George. These annuities are required to be paid out of ''the net income of my estate'' and to be proportionately reduced or increased according to the amount of the income. It is further provided that these amounts are not to be charged against the respective parties ''in the final distribution of my estate.''

Counsel for the George B. Monypeny share contend that the phrase used in item 5, ''net income of my estate'' should be

Babcock v. Monypeny.

read "net income of the portion of my estate represented by clause three, item 4." In our opinion, it is more reasonable to harmonize items 4 and 5 and avoid conflict by reading item 5 as written, and reading into clause two of item 4 an apparent omission of the date of raising the spendthrift trust. This construction harmonizes all the items and clauses of the will and does violence to none.

The phrase "except and after deducting the special bequests," etc., expresses the quantity of the estate to be divided rather than the time of division. The expression "as though said trust did not exist" in clause three of item 4 is designed to release from the trust of that clause the portion due a child whose share fails for want of issue, and to permit such share to remain in or become a part of the general estate for distribution the same as if the trust provided for in clause three did not exist as to such child. The condition in clause two, item 4, providing for the lapsing of the devise to one or both of the sons in case of death and failure of issue, speaks as of the day of final distribution and of an event which had then occurred, or might thereafter occur, and is, therefore, in the language used, consistent with the construction that the raising of the fund in favor of George and his children is to be substantially concurrent with the final distribution expressly fixed in clause three.

The fact that a portion of the estate of William Monypeny, deceased, consists of real estate located in the state of New York does not in our opinion affect the true construction of the will. There is nothing in the case or in the will to justify us in assuming that the testator knew of the statute laws of New York and acted with reference thereto or had specially in mind the laws of the state of New York affecting the distribution of his estate. Whether under the construction of the will given in this state the devise or any portion of it is void as to the real estate situated in New York is naturally a subject of determination by the New York courts.

It, therefore, follows under a true construction of the will the trust created by clause two, item 4, of the share of George

B. Monypeny should be raised on or immediately prior to November 18, 1912.

The next question is as to the quantity of the estate taken by George B. Monypeny.

The guardian on behalf of his wards claims that the interest of George B. Monypeny, both in the principal and income, is limited to his life, and that upon his death all interest in the devise, both as to income and principal, becomes vested in his children.

On behalf of the widow and executrix of George B. Monypeny, it is contended first, that George B. Monypeny took a fee simple estate in the whole devise, and second, at least, in the full income provided for in the devise.

Upon the first question, we think it clear that while the first sentence in item 4, clause two, grants the use and benefit of the trust therein created to George B. Monypeny and his heirs and assigns forever, yet this apparently absolute estate is reduced by a subsequent grant equally distinct and clear of the "property" of the trust upon the death of George B. Monypeny in fee simple to his legitimate children to be subject to advancement and conveyance absolutely to them upon the youngest child becoming of age.

The net income under clause two of item 4 is payable to George B. Monypeny or his heirs. The disjunctive connection is intended to harmonize with the condition previously stipulated granting the estate to George B. Monypeny for life and upon his death to his children. The income is, therefore, payable to George during life and his children after his death, agreeably to the previous devise conferring the estate.

The amount payable to George B. Monypeny under item 5 becomes upon his death by virtue of item 7 payable to his children or their guardian.

The 10th item provides for a sinking fund from which improvements and betterments of the real estate may be made. The term "sinking fund" is ordinarily applied to accumulations from income to be used in the discharge of indebtedness. But in the manner in which it is employed in item 10, we think

Babcock v. Monypeny.

it refers to accumulations of the principal of the estate to be derived from the sales of personal or real property for the purposes of reinvestment. This construction is necessary to harmonize with item 5, which fully provides for the distribution of the net income, deducting the expenses including necessary repairs to the real estate. The income of the estate is, therefore, in our opinion, fully provided for in item 5.

The discretion given to the executors in item 5 relates to the question of payment in money or articles for comfortable maintenance. The provision for payment of the annuities *pro rata* according to the income of the estate, either in money or articles of property, is absolute and cannot be withheld and accumulated under the 10th item. George B. Monypeny was, therefore, entitled to the full *pro rata* share of the income of the estate under item 5 according to his annuity of $2,000 per year, and his executrix is entitled to an accounting and the payment of any balance due. The annuity or *pro rata* share from the time of the death of George is payable to his children under item 7. Likewise, the net income of the share of George B. Monypeny under clause two, item 4, from the time it becomes available is payable to the children of George B. Monypeny and subject to advancements provided for in clause two, item 4, subject to the discretion of the trustees.

**Dustin** and **Ferneding, JJ.,** concur.